**SO ORDERED.**

**SIGNED this 30th day of September, 2026.**

Mitchell L. Herren
Chief United States Bankruptcy Judge

*DESIGNATED FOR ONLINE PUBLICATION*
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

**IN RE:**

**Hawker Beechcraft, Inc. et al.,**

**Debtor.**

**Case No. 12-11873**
**Chapter 11**
*U.S. Bankruptcy Court, Southern District of New York*

**Warren Denning, Dominic Valle, and Kimberly Valle,** individually and on behalf of all others similarly situated**,**

**Plaintiffs,**

**vs.**

**Textron Aviation, Inc.,**

**Defendant.**

**Adv. No. 26-5009**

## Proposed Findings of Fact and Conclusions of Law Regarding Jurisdiction and Abstention

This adversary proceeding originated in state court, was removed to federal district court based on allegations of bankruptcy court jurisdiction and federal question jurisdiction, and was then referred here by the District Court for a determination of bankruptcy court jurisdiction. Pending are a motion to dismiss filed by the defendant and a motion to remand filed by the plaintiffs.[1]

As reflected in the case caption above, the bankruptcy case upon which this Court's jurisdiction is pinned is a Chapter 11 case filed in another district—the Bankruptcy Court for the Southern District of New York. It is also the bankruptcy of an entity that no longer exists because it exited bankruptcy as a new corporation. It then later underwent a change of ownership. Simply put, the bankruptcy case was closed more than ten years ago, in a different venue and for a different entity.

The defendant in the recently filed state court litigation is, highly summarized, alleged to have contaminated real property with chemical pollutants. The defendant argues there is statutory, core jurisdiction over the plaintiffs' state law claims based on the need to enforce the discharge injunction from the closed bankruptcy case. The plaintiffs argue there is no core jurisdiction, and the case should be remanded to state court because the case satisfies the statutory elements of mandatory abstention and permissive abstention.

After considering the parties' briefs and hearing oral argument, the Court concludes it does not have core jurisdiction over this proceeding because it neither

---

[1] Plaintiffs appear by Jonathan B. Nace of Nidel & Nace, PLLC, and Jerry D. Bogle of Young, Bogle, Wells & Blanchard, PA. Defendant appears by Brian C. Fries and Brian M. Holland of Lathrop GPM LLP.

arises under title 11, nor arises in title 11. The Court has "related-to" jurisdiction, as the proceeding is related to a case under title 11. However, after analyzing the statutory bases for abstention, the Court believes permissive abstention by the bankruptcy court is appropriate under 28 U.S.C. § 1334(c)(1).

And finally, because this is a non-core proceeding, these proposed findings of fact and conclusions of law are submitted to the district court for its consideration and for further proceedings.[2] Although this Court recommends abstention is warranted under 28 U.S.C. § 1334(c)(1), that still leaves for determination the defendant's removal under 28 U.S.C. § 1441, whether jurisdiction is proper under 28 U.S.C. § 1331, and the defendant's motion to dismiss.

## I. Factual and Procedural Background

Plaintiffs are three named individuals, seeking relief individually and on behalf of all others similarly situated. Located in east-central Wichita, Kansas, the 650-acre real property at issue (the "Facility" or "Site") has been an aircraft manufacturing site for many years. Plaintiffs' state court petition is not clear about

---

[2] 28 U.S.C. § 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."); *See also Int'l Elec. Inc. v. Anthony & Gordon Constr. Co. (In re Int'l Elec., Inc.)*, 557 B.R. 204, 212 (Bankr. D. Kan. 2016) ("When a bankruptcy court is presented with a non-core claim, 'the proper course is to issue proposed findings of fact and conclusions of law. The district court will then review the claim *de novo* and enter judgment.'" (quoting *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 31 (2014))). Under 28 U.S.C. § 157(c)(2), "with the consent of all the parties to the proceeding" the bankruptcy court could hear and determine related-to proceedings. Defendant consents to entry of final orders by the bankruptcy court, s*ee* Doc. 1 p. 5 ¶ 15 ("[Defendant] consents to entry of final orders or judgment by the Bankruptcy Court"), but Plaintiffs do not consent to this Court's subject matter jurisdiction.

who allegedly did what, and when. For example, the petition acknowledges only one Defendant – Textron Aviation, Inc. But the petition occasionally uses the plural "Defendants;" presumably because of the changing status of the entity at the Facility over the course of the last thirty years.

Raytheon Aircraft Company owned the Facility in the 1990s. In 2007, Raytheon Aircraft Company was sold to Hawker Beechcraft Corporation. In May 2012, Hawker Beechcraft Corporation filed a Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court, Southern District of New York, "and emerged from bankruptcy in February 2013 as Beechcraft Corp."[3] In 2014, Textron, Inc. acquired Beechcraft Corp. Defendant Textron Aviation, Inc. is a subsidiary of Textron, Inc.

The petition alleges both "contamination at the Site" from "spills that took place in 1993 or earlier"[4] and a continued contamination occurring at the Site. The following paragraph of the petition is illustrative:

> Defendant has released, leaked, and leached and continue[s] to release, leak, and leach contaminants that have migrated and continue to migrate into, under, onto and around the Plaintiffs' and the Class Members' properties and residences. Defendant has contaminated and continue[s] to contaminate these properties with harmful chemicals—including toxic and carcinogenic chlorinated solvents such as TCE and 1,4-dioxane.[5]

Plaintiffs allege the "spills and leaks" at the Facility have resulted in contamination spreading throughout adjacent neighborhoods, extending a half mile

---

[3] Doc. 1-1 p. 11 of 37. Per Defendant's motion to dismiss, the confirmation order was entered on February 1, 2013, and the discharge and injunction order were entered "later," but the exact date is not stated.

[4] *Id.* p. 11 of 37 ¶ 17.

[5] *Id.* p. 11 of 37 ¶ 16.

west and south of the Facility. The petition alleges harm to physical health and wellbeing and a devaluation of residences and properties. It further alleges continued release and migration of contaminants, failure to implement effective remediation or mitigation measures, and that Defendant has known or should know that remediation measures have been ineffective and operations have been discharging contaminants that continue to migrate from the Site. Plaintiffs assert Defendant remained silent and did not notify the general public that property was either contaminated or threatened by contaminants and that "[f]or ten years Defendant has owned and/or operated the Site" and failed to control contaminants, remediate contamination, and notify the public about the threats.[6]

Plaintiffs filed their state court petition in Sedgwick County District Court. It states four causes of action: Count 1: negligence; Count 2: private continuing nuisance; Count 3: continuing trespass; and Count 4: violation of the Kansas Discharge Statute, Kan. Stat. Ann. § 65-6203. Plaintiffs demand a jury trial. They seek class action status, a judgment "for the loss of permanent and temporary or continuing property value, mitigation, remediation, stigma, unjust enrichment, the cost of prompt corrective action, and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, costs of notice to class members, fees and costs of this suit," pre- and post-judgment interest, punitive damages, and attorneys' fees and costs.[7]

---

[6] *Id.* p. 12 of 37 ¶ 25.

[7] *Id.* p. 35 of 37.

Defendant filed a Notice of Removal, removing the state court action to the U.S. District Court for the District of Kansas. The Notice of Removal, filed under 28 U.S.C. § 1452 and § 1441, alleges jurisdiction under both 28 U.S.C. § 1334(b) and § 1331.

In lieu of answering, Defendant filed a motion to dismiss, alleging that in June 1995, the Kansas Department of Health and Environment and Raytheon Aircraft Company entered into a Consent Order requiring environmental testing, monitoring, oversight, and clean up at the main facility and surrounding areas. In addition, the motion alleges the Environmental Protection Agency and Beechcraft Corp. entered into a CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act) settlement in Debtor Hawker Beechcraft Corporation's Chapter 11 bankruptcy case.

In the motion to dismiss Defendant argues (1) the plan confirmed in the bankruptcy case of Hawker Beechcraft Inc. discharged and released all of Plaintiffs' claims; (2) CERCLA preempts Plaintiffs' state law claims; and (3) Plaintiffs' claims are time barred by the Kansas statutes of limitation and repose. Attached to the motion to dismiss are a "Stipulation and Order Resolving Claims of the United States of America and the Kansas Department of Health and Environment," dated November 20, 2017, and filed in the Hawker Beechcraft, Inc. bankruptcy case.[8] Also included is a Proof of Claim filed by the Kansas Department of Health and

---

[8] The Stipulation appears to contemplate judicial approval and states it is not effective until approved by the Bankruptcy Court, Doc. 10 Ex. 1 p. 16, but no such approval is attached.

Environment in the bankruptcy case, and the "Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code," (Confirmation Order) dated February 1, 2023, and filed in the Hawker Beechcraft, Inc. bankruptcy case. The Confirmation Order discharges the debtor "from all existing debts and Claims."[9] The plan to which the Confirmation Order refers to is not attached.[10] However, the Notice of Removal purports to quote a section of the discharge provision of the plan that states, unless as otherwise provided in the plan, the plan discharges "all debt . . . that arose before the Confirmation Date, . . . whether or not . . . a Proof of Claim based on such debt . . . is filed" or "the Holder of such a Claim . . . has accepted the Plan."[11]

Plaintiffs then filed a motion to remand the proceeding to state court, arguing (1) Defendant's removal violates the well-pleaded complaint rule; (2) the proceeding must be remanded under the mandatory abstention doctrine under 28 U.S.C. § 1334(c)(1) and should be remanded based on permissive abstention; (3) Plaintiffs' claims, for a variety of factual and legal reasons, were not discharged in the Hawker Beechcraft Corporation bankruptcy; and (4) Defendant's CERCLA defense does not confer subject matter jurisdiction on the District Court. After both motions were

---

[9] Doc. 10 Ex. 3 p. 35.

[10] As a result, the Court does not have access to defined terms from that plan, including the definition of the word "Claims."

[11] Doc. 1 p. 4 (purporting to quote a portion of the "Discharge and Injunction Provisions" from the bankruptcy case).

fully briefed the District Court took them under advisement, and all pretrial proceedings and discovery were stayed pending resolution of the motions.

The District Court then entered a Memorandum and Order, referring the proceeding to the bankruptcy court. The District Court noted D. Kan. Rule 83.8.5(a) refers to the bankruptcy court "all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11." Applying the close-nexus test to determine whether this proceeding relates to a Title 11 case, the District Court concluded it did "because, for plaintiffs to succeed on their claims over defendant's discharge defense, a court must interpret the scope and effect of the confirmation plan from Beechcraft's bankruptcy proceedings."[12] The Court concluded there was related-to jurisdiction at least for the purposes of referral under D. Kan. Rule 83.8.5(a) and noted the bankruptcy court's obligation to examine its own jurisdiction.[13] The District Court expressed no opinion on the merits of the motion to dismiss or the motion to remand.

---

[12] Doc. 3 p. 3.

[13] *See id.* p. 3 n.1 ("For clarity, the court determines just that this case relates to a case under Title 11 for purposes of D. Kan. Rule 83.8.5(a). The court leaves it to the bankruptcy court to examine, in the first instance, its jurisdiction over this case.").

## II. Jurisdiction

### *A. Subject Matter Jurisdiction, Generally*

As the District Court noted, this Court has an independent obligation to examine its own subject matter jurisdiction.[14] Bankruptcy courts are courts of limited jurisdiction; those limits are expressed by statute.[15]

Defendant's Notice of Removal is filed "pursuant to 28 U.S.C. §§ 1452 and 1441." Under 28 U.S.C. § 1452, "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Under 28 U.S.C. § 1441, a state court civil action may be removed "to the district court of the United States for the district and division embracing the place where such action is pending." The Notice of Removal then asserts District Court jurisdiction based on 28 U.S.C. § 1334(b) (bankruptcy cases and proceedings) and § 1331 (federal question).

This Court's sole jurisdictional grant is found within 28 U.S.C. § 1334. Under 28 U.S.C. § 1334, upon referral from federal district courts, bankruptcy courts have

---

[14] *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)); *see also* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.").

[15] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir. 1990) ("Bankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress.").

"original and exclusive jurisdiction" over "all cases under title 11,"[16] and "original but not exclusive jurisdiction" over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[17] In this District, the referral of these matters is expressed in D. Kan. Rule 83.8.5(a), which mirrors referral under 28 U.S.C. § 1334.[18]

A case arising under or arising in title 11 is a core proceeding; it has "no existence outside of bankruptcy."[19] A related proceeding is a "civil proceeding[] that, in the absence of a bankruptcy petition, could have been brought in a district court or state court."[20] A bankruptcy court may hear and determine core proceedings,[21] but in non-core proceedings may only hear and make proposed findings of fact and conclusions of law unless all parties consent.[22]

Finally, to determine its jurisdiction, the Court must also consider the well-pleaded complaint rule. Under this rule, a court assesses its jurisdiction based on a plaintiff's statement of its cause of action, not the defendant's assertion of a federal

---

[16] 28 U.S.C. § 1334(a).

[17] 28 U.S.C. § 1334(b).

[18] D. Kan. Rule 83.8.5(a) (referring to the bankruptcy court "all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11.").

[19] *In re Gardner*, 913 F.2d at 1517.

[20] *Id.*

[21] 28 U.S.C. § 157(b)(1).

[22] 28 U.S.C. § 157(c)(1)-(2). *See also Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (B.A.P. 10th Cir. 1997) ("A bankruptcy judge may also hear a proceeding that is not a core proceeding but that is otherwise 'related to' a case under title 11. In such a proceeding, however, the bankruptcy judge is required to 'submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be determined by the district judge . . . .' 28 U.S.C. § 157(c)(1). However, parties may consent to a bankruptcy judge entering judgment in a non-core, 'related to' case.").

defense.[23] However, "[i]f a court concludes that a plaintiff has 'artfully pleaded' claims [to purposefully omit a necessary federal question], it may uphold removal even though no federal question appears on the face of the plaintiff's complaint."[24] While bankruptcy courts have applied the well-pleaded complaint rule,[25] bankruptcy courts have also concluded the well-pleaded complaint rule is properly considered only applicable to "arising under" jurisdiction under title 11, and not considered when analyzing jurisdiction under 28 U.S.C. § 1334 based on proceedings "arising in" or "related to" a case under title 11.[26]

---

[23] *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiffs properly pleaded complaint. A defense is not part of a plaintiffs properly pleaded statement of his or her claim."); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10–11 (1983) (federal defense cannot confer federal jurisdiction).

[24] *Rivet*, 522 U.S. at 475. There are "at least . . . two recognized exceptions to the well-pleaded complaint rule," namely that state law claims are "completely preempted," or that "there is a substantial, disputed federal-law issue necessarily embedded" in the plaintiff's state-law claims. *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203-04 (10th Cir. 2012).

[25] *In re G-I Holdings, Inc.*, 564 B.R. 217, 247–48 (Bankr. D.N.J. 2016) ("Bankruptcy courts are also bound by the well-pleaded complaint rule; matters are not removable to the bankruptcy court if the complaint does not affirmatively allege a federal claim. Therefore, if the Bankruptcy Code is only implicated as part of a defense to the complaint, the complaint is not removable to the bankruptcy court." (internal quotation omitted)). *See also McManus v. Orleans RH PA–IL*, No. 15-cv-402, 2015 WL 1475334, at *2 (E.D. Pa. Mar. 30, 2015) (concluding the defendant's defense of the discharge injunction to the plaintiff's state law causes of action was insufficient to "invoke federal question jurisdiction" under the well pleaded complaint rule).

[26] *Giese v. Cmty. Tr. Bank (In re HRNC Dissolution Co.)*, No. 02-14261, 2015 WL 5299468, at *7 (Bankr. E.D. Ky. Sept. 9, 2015) ("The well-pleaded complaint rule, the Supreme Court has explained, 'applies only to statutory 'arising under' cases'—i.e., cases brought under those grants of federal jurisdiction that confer jurisdiction over claims arising under federal law or some subset of federal law. Thus, while the well-pleaded complaint rule may apply to § 1334(b)'s grant of arising-under jurisdiction, it has no application to arising-in jurisdiction." quoting *Am. Nat'l Red Cross v. S.G. & A.E.*, 505 U.S. 247, 258 (1992)); *McIntyre Land Co. v. McIntyre Bldg. Co. (In re McIntyre Bldg. Co. Inc.)*, No. 10-30558-WRS, 2011 WL 1434691, at *11-12 (Bankr. M.D. Ala. Apr. 14, 2011) (discussing cases and analyzing *Am. Nat'l Red Cross v. S.G. and A.E.*).

*B. The Proceeding is Not a Core Proceeding*

Again, a core proceeding is one arising under or arising in title 11, the Bankruptcy Code. "A proceeding 'arises under' the Bankruptcy Code if it asserts a cause of action created by the Code, such as exemption claims under 11 U.S.C. § 522, avoidance actions under 11 U.S.C. §§ 544, 547, 548, or 549, or claims of discrimination under 11 U.S.C. § 525."[27] A proceeding "arises in" title 11 if it "could not exist outside of a bankruptcy case" but is not a cause of action created by the Bankruptcy Code.[28] "For example, orders respecting the obtaining of credit, confirmation of a plan, the assumption or rejection of a contract are all matters which could not exist absent the filing of a bankruptcy case, but are not causes of action created by the Bankruptcy Code."[29]

Defendant's Notice of Removal states, without analysis, that the matter is a core proceeding because of 28 U.S.C. §157(b)(2)(I) ("Core proceedings include . . . determinations as to the dischargeability of particular debts"). In response to Plaintiffs' motion to remand, Defendant again cites 28 U.S.C. § 157(b)(2)(I) and argues Defendant's "dischargeability claims are core bankruptcy proceedings."[30] But the state court petition is not an objection to the dischargeability of debt, as contemplated by 28 U.S.C. § 157(b)(2)(I). An objection to the dischargeability of debt

---

[27] *In re Midgard Corp.*, 204 B.R. at 771.

[28] *Id.*; *see also Telluride Asset Resolution, LLC v. Telluride Glob. Dev., LLC (In re Telluride Income Growth, L.P.)*, 364 B.R. 390, 397–98 (B.A.P. 10th Cir. 2007) ("The term 'arising in' refers to administrative matters that are not based on any right expressly created by Title 11 but would nevertheless have no existence outside of the bankruptcy case." (internal quotations omitted)).

[29] *In re Midgard Corp.*, 204 B.R. at 771.

[30] Doc. 18 p. 8.

is a cause of action stating a claim under 11 U.S.C. § 523(a),[31] which is an exception to discharge, and not presented here.[32]

Defendant asserts that "whether the discharge injunction from the Bankruptcy Case bars the Plaintiffs' claims is a core proceeding arising under or in title 11,"[33] citing *In re Essar Steel Minnesota, LLC*,[34] a Third Circuit case from 2022. In that case, two related debtors filed a Chapter 11 bankruptcy in the District of Delaware in July 2016. Nearly a year later, the bankruptcy court confirmed a plan of reorganization, with a plan sponsor funding the debtors' exit from bankruptcy. The confirmed plan discharged all claims against the debtors arising before the plan's effective date and enjoined actions against the debtors and the plan sponsor

---

[31] *See Grogan v. Garner*, 498 U.S. 279, 284, n.10 (10th Cir. 1991) (bankruptcy courts have exclusive jurisdiction to determine exceptions to discharge of debt under 11 U.S.C. § 523(a)); *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793 (10th Cir. 2009) ("a proceeding to determine non-dischargeability of a debt under § 523 is a core proceeding arising under the bankruptcy code and may be determined by a bankruptcy court"); *Tobias v. Alvarado (In re Alvarado)*, 608 B.R. 877, 880 (Bankr. W.D. Okla. 2019) ("a determination as to the dischargeability of a particular debt" is a "core proceeding under 28 U.S.C. § 157(b)(2)(I)").

[32] Likewise, the state court petition is not an objection to the entry of discharge, as contemplated by 28 U.S.C. § 157(b)(2)(J) ("Core proceedings include . . . objections to discharges"). An objection to discharge is a cause of action stating a claim under 11 U.S.C. § 727 or § 1328(e). *See Kontrick v. Ryan*, 540 U.S. 443, 448-49 (2004) (adjudication of claim arising under 11 U.S.C. § B.R. 727(a) is a core proceeding per 28 U.S.C. § 157(b)(2)(J)); *In re Garland*, 417 B.R. 805, 819 (10th Cir. 2009) (stating "the issue of Debtor's entitlement to discharge under various provisions of the Bankruptcy Code is not an issue that would have arisen in, or been determined by, a state court in a foreclosure action" because "[o]bjections to a debtor's discharge are 'core' bankruptcy proceedings," citing 28 U.S.C. § 157(b)(2)(J)); *Lashinsky v. Pennington (In re Pennington)*, No. 19-10112, 2025 WL 2500139, at *4 (Bankr. D. Kan. Aug. 29, 2025) (revocation of discharge under 11 U.S.C. § 1328(e) is a core proceeding under 28 U.S.C. § 157(b)(2)(J)); *The Shack, LLC v. Hickman (In re Hickman)*, 616 B.R. 815, 818 (Bankr. W.D. Okla. 2020) (denial of discharge under 11 U.S.C. § 727(a)(4)(A) is a core proceeding per 28 U.S.C. § 157(b)(2)(J)); *Morris v. Wright (In re Wright)*, 371 B.R. 472, 474 (Bankr. D. Kan. 2007) (claim for revocation of discharge under 11 U.S.C. § 727(d) is a core proceeding under 28 U.S.C. § 157(b)(2)(J)).

[33] Doc. 17 p. 8.

[34] 47 F.4th 193 (3d Cir. 2022).

by holders of those claims. The debtors emerged from bankruptcy as a new, reorganized entity.

During the bankruptcy case the plan sponsor sought to acquire the debtors and another affiliate and engaged a financial advisor. The financial advisor was to receive a restructuring transaction fee if the affiliate acquired the debtors. The parties' agreement was later amended to include additional financial advisor services for consummation of certain debt-financing transactions. One day before the plan's effective date, the financial advisor, the affiliate, and the plan sponsor entered a second amendment to their agreement, purportedly binding the affiliate, the plan sponsor, and the post-effective date reorganized entity.

Six months after the plan's effective date, the financial advisor sought more than $16 million from the plan sponsor and the reorganized entity as a success fee under the parties' agreement. When the reorganized entity refused to pay, the financial advisor initiated two actions to collect: a lawsuit in the United States District Court for the District of Minnesota and an arbitration action filed with the Financial Industry Regulatory Authority. In response, the reorganized entity filed an adversary complaint in the bankruptcy court in the District of Delaware, arguing that the fee had been discharged by the plan and its confirmation order, and that the financial advisor's actions to collect violated the confirmation order. The financial advisor moved to dismiss the adversary proceeding, contending that its claim was not a pre-effective date claim enjoined by the plan and confirmation order.

The bankruptcy court dismissed the adversary proceeding for lack of subject matter jurisdiction. On certification of a direct appeal to the Third Circuit, the Circuit reversed and remanded. The Third Circuit defined the underlying dispute as "asking the Bankruptcy Court to interpret and implement the discharge injunction it issued in the plan and confirmation order."[35] The Circuit then determined it need not assess related-to jurisdiction, because the matter was core. To justify this conclusion, the Circuit noted bankruptcy courts "routinely" recognize requests to interpret a confirmation order issued in the case as core.[36] It then relied on a bankruptcy court's power to "redress a possible contempt of its plan and confirmation order," because a civil contempt proceeding arising out of a core matter would also be a core matter.[37] The Third Circuit, without analysis, called the "plan and confirmation order . . . explicitly enumerated core proceedings under § 157(b)(2)" and therefore, because "the contempt proceeding" arose out of the "previously entered plan and confirmation order," concluded it was also a core proceeding.[38]

Notably, the Third Circuit characterized the adversary proceeding in the bankruptcy court as a "contempt proceeding" when it concluded it was a core proceeding. The Third Circuit then went on to conclude that, "in addition," the bankruptcy court had jurisdiction to interpret and enforce the discharge and

---

[35] *Id.* p. 198.

[36] *Id.* p. 199.

[37] *Id.* p. 200.

[38] *Id.*

injunction provisions of its plan and confirmation order.[39] In this part of its decision, the Third Circuit did not differentiate core (whether arising under or arising in) versus related-to jurisdiction regarding the interpretation of the discharge injunction. In other words, the Third Circuit did not specify or analyze whether the bankruptcy court had either arising-under or arising-in—i.e., core—jurisdiction to interpret and enforce the discharge and injunction provisions or whether that jurisdiction was non-core. But it did note a bankruptcy court has wide latitude to abstain under 28 U.S.C. § 1334(c)(1) (permissive abstention),[40] which applies to both core and non-core proceedings.

The Third Circuit's decision is best broken into its two parts. First, this Court agrees with the conclusion that an affirmative claim against an individual or entity for contempt for violation of a discharge injunction is a core proceeding. Other courts, including the Fifth Circuit, appear to agree with that conclusion.[41] But, as stated above, Defendant does not seek a contempt order for violation of the discharge injunction or confirmation order, which Defendant confirmed at oral argument in this Court. So, the Third Circuit's decision in *In re Essar Steel Minnesota, LLC* that a bankruptcy court has core jurisdiction over a contempt

---

[39] *Id.* p. 200-01.

[40] *Id.* p. 201.

[41] *See Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) (enforcing the substantive right conferred by the Code via a motion for contempt is core); *see also Garza v. Earthstone Energy, Inc.*, 582 F. Supp. 3d 405, 414 (S.D. Tex. 2022) (a debtor may move to reopen a bankruptcy case to bring an adversary proceeding to enforce the discharge injunction or file a declaratory judgment action in the bankruptcy court without needing to invoke related-to jurisdiction).

proceeding based on a discharge injunction violation stemming from a confirmation order *recently issued by that court*, is not applicable here.[42]

As noted, the Third Circuit additionally concluded the bankruptcy court had jurisdiction to interpret and enforce the plan and discharge provisions of that plan. But in this part of the decision, the Third Circuit again focused on a court's ability to interpret and enforce its own orders when a debtor seeks affirmative relief based on those orders. The Third Circuit relied on the Supreme Court's decision in *Travelers Indemnity Co. v. Bailey*,[43] which held that a bankruptcy court "plainly had jurisdiction to interpret and enforce its own prior orders."[44] The Third Circuit applied that same principle to conclude the bankruptcy court there had jurisdiction to interpret and enforce the discharge and injunction provisions of "its plan and

---

[42] Another concern is raised in *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012). In that case, the Eleventh Circuit concludes the court with jurisdiction to sanction for contempt of an injunction, i.e., the discharge injunction, is the court that entered the injunction. But the case also has broader language that "the court that issued the injunctive order *alone* possesses the power to *enforce compliance with* and punish contempt of that order." *Id.* (emphasis added). Ultimately, the Eleventh Circuit concludes: "If Creditors' claims were discharged, then the Delaware Bankruptcy Court alone had the power to sanction Creditors' alleged contempt for prosecuting discharged claims in violation of the injunction. Thus, regardless of how Debtors framed the allegations of the complaint they filed in the Florida Bankruptcy Court—as seeking the sanctioning of Creditors' alleged contempt, an injunction against further violation of the discharge injunction, or an order enjoining the State Court case from proceeding further—the Florida Bankruptcy Court lacked jurisdiction to entertain the complaint because the discharge injunction was never its to enforce." *Id.* at 971. Under the logic of the *Alderwoods Group, Inc.* case, therefore, a debtor seeking affirmative relief based on its discharge injunction can only seek that relief from the bankruptcy court that issued the injunction. Here, Defendant (the successor to the former debtor) is seeking to use the discharge injunction as a defense to claims and ultimately, the Eleventh Circuit's holding in *Alderwoods Group, Inc.* is not applicable.

[43] 557 U.S. 137 (2009).

[44] *Id.* at 151.

confirmation order."[45] But neither the Supreme Court in *Travelers Indemnity Co.,* nor the Third Circuit in *In re Essar Steel Minnesota, LLC* addressed whether that jurisdiction was core or non-core. And neither the Supreme Court nor the Third Circuit addressed whether a bankruptcy court has *core jurisdiction* to determine whether a discharge injunction issued by another bankruptcy court grants bankruptcy court jurisdiction over a plaintiff's state law claims based solely on the discharge being raised as a defense.

There are courts in other jurisdictions that have concluded there is postconfirmation, core jurisdiction for a bankruptcy court to apply the discharge injunction to state law claims.[46] In addition to the differences noted in the cases above, these courts often rely on a confirmation order retaining that jurisdiction for

---

[45] *In re Essar Steel Minnesota, LLC*, 47 F.4th at 201. *See cf. Elliott v. Gen. Motors, LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 153 (2d Cir. 2016) (concluding a bankruptcy court has arising-in jurisdiction to interpret and enforce a prior sale order because the sale of property could not exist without the Bankruptcy Code and § 105(a) permits a court to issue orders necessary or appropriate to carry out the provisions of the Code); *Roberts v. Green Convergence (In re SunPower Corp.)*, No. 24-11649, 2026 WL 2147348, at *12 (Bankr. D. Del. July 23, 2026) (analyzing Third Circuit case law and concluding that in the Third Circuit "some form of related-to jurisdiction could exist after a plan is confirmed" although a court "enforcing or construing its own order" would not typically require the court to rely on related-to jurisdiction).

[46] *See, e.g.*, *In re Texaco, Inc.*, 505 F. App'x 77, 80 (2d Cir. 2012) (unpublished) (concluding bankruptcy court was "well within" its jurisdiction to find all claims asserted in a state court action were discharged by the confirmation order, directing the state court plaintiffs to dismiss their claims, and enjoining the plaintiffs from pursuing the claims); *In re Weiand Auto. Indus.*, 612 B.R. 824, 857 (Bankr. D. Del. 2020) (concluding bankruptcy court has core jurisdiction over the question of liability for and recovery of insurance proceeds from postconfirmation debtor's insurance because court was being asked to determine the applicability of its discharge injunction to the claims).

that bankruptcy court.[47] More recent authority, however, rejects the conclusion that a party can manufacture its own jurisdiction solely with retention language.[48]

In this Court's opinion there is no core bankruptcy court jurisdiction here. This is not a matter arising under the Bankruptcy Code because the state court petition does not assert a cause of action created by the Code. Neither does the petition invoke substantive rights provided under title 11. This is also not a matter arising in a case under title 11 since it is not a matter that has "no existence outside of bankruptcy," the definition of arising-in jurisdiction in this Circuit. The causes of action in Plaintiffs' petition are all based on state law. As the Tenth Circuit BAP has noted, if a proceeding "could be and was commenced independently" of the bankruptcy case, "is based entirely on state tort law," and is not dependent on the bankruptcy case for its existence, then it is not a proceeding arising in a bankruptcy case.[49] While ultimately a court may need to enforce the terms of the confirmation

---

[47] *In re Texaco, Inc.*, 505 F. App'x at 80 (assessing postconfirmation jurisdiction based on the confirmed plan's retention of jurisdiction "to take any action to resolve any disputes arising out of or relating to any claim, and to construe and to take any action to enforce the plan"); *In re Weiand Auto. Indus.*, 612 B.R. at 857 (finding jurisdiction in part based on retention of jurisdiction language in confirmation order; issue raised on motion for declaratory relief in bankruptcy court).

[48] *See, e.g.*, *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 663 (1st Cir. 2017) ("[A] bankruptcy court may not 'retain' jurisdiction it never had—i.e., over matters that do not fall within § 1334's statutory grant."); *In re Nw. Bancorporation of Illinois, Inc.*, 679 B.R. 741, 754 (Bankr. N.D. Ill. May 4, 2026) ("The bankruptcy courts' subject matter jurisdiction is statutory and comes from sections 1334 and 157, not what the terms of a [confirmed plan] may say. To hold otherwise would be to allow a bankruptcy court to confer upon itself more than the statute permits."); *First Citizens Bank & Tr. v. SVB Fin. Grp. (In re SVB Fin. Grp.)*, 671 B.R. 351, 369 (Bankr. S.D.N.Y. 2025) (noting postconfirmation jurisdiction "shrinks" and the matter must have a close nexus to the bankruptcy plan or proceeding *and* the chapter 11 plan must provide for the retention of jurisdiction over the dispute).

[49] *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 772 (B.A.P. 10th Cir. 1997).

order or the discharge injunction issued by the Bankruptcy Court in the Southern District of New York, that function alone does not make this a core matter.[50]

### *C. Related-To Jurisdiction*

Congress did not define or delineate the scope of related-to jurisdiction. And although the Supreme Court has noted the grant of such jurisdiction to bankruptcy courts was broad and comprehensive, it has also recognized "a bankruptcy court's 'related to' jurisdiction cannot be limitless."[51]

The Tenth Circuit has adopted the Third Circuit's test from *Pacor, Inc. v. Higgins*[52] and concluded that whether a civil proceeding is related for determining bankruptcy court jurisdiction is "'whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"[53] To be related, "the proceeding need not be against the debtor or his property," rather, "the proceeding is related to the bankruptcy if the outcome could alter the debtor's

---

[50] *Scarborough v. Angel Fire Resort Operations, LLC (In re Angel Fire Corp.)*, No. 93-12176-3a11, 2013 WL 1856350, at *8 (D.N.M. May 2, 2013) ("If an action does not depend on bankruptcy laws for its existence and could proceed in another court, it is not a core proceeding.").

[51] *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth. . . . We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984), that 'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate,' *id.*, at 994; . . . and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's related to jurisdiction cannot be limitless.").

[52] 743 F.2d 984 (3d Cir.1984), overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 134–135 (1995). As noted directly above, the Supreme Court has also adopted the *Pacor, Inc.* test for related-to jurisdiction. *Celotex Corp.*, 514 U.S. at 308 (agreeing "with the views expressed" in *Pacor, Inc.*).

[53] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990) (quoting *Pacor, Inc.*, 743 F.2d at 994).

rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate."[54]

Although it does not change after confirmation, "it is generally accepted that a bankruptcy court's jurisdiction narrows to some extent after plan confirmation with respect to non-core proceedings and 'related to' jurisdiction."[55] The *Pacor, Inc.* test for related-to jurisdiction has been said to be "both too narrow and too broad" when applied to postconfirmation proceedings:

> It is too narrow because . . . in the vast majority of reorganization cases, confirmation of a debtor's plan vests the estate's property in the debtor and the estate ceases to exist. Applying the *Pacor* test literally would mean bankruptcy courts have no "related to" jurisdiction following confirmation. This test is also too broad because bankruptcy courts have always viewed confirmation as an event that severs the once close ties between the former debtor and the bankruptcy court.[56]

Many Courts of Appeal have adopted the test the Third Circuit expressed in *Resorts International* for postconfirmation, related-to jurisdiction: "[a]t the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding."[57] The Third Circuit also stated: "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."[58] This close nexus test has been adopted by the

---

[54] *Id.*

[55] *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 675 (B.A.P. 10th Cir. 2012).

[56] *In Play Membership Golf, Inc. v. Billy Casper Golf, LLC (In re In Play Membership Golf, Inc.)*, 576 B.R. 15, 21 (Bankr. D. Colo. 2017). *See also* 11 U.S.C. § 1141(b) (confirmation vests property of the estate in the reorganized debtor unless the plan states differently).

[57] *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l)*, 372 F. 3d 154, 167 (3d Cir. 2003).

[58] *Id.*

Fourth Circuit, Sixth Circuit BAP, and the Ninth Circuit.[59] In the Fifth Circuit, a potentially narrower interpretation of postconfirmation related-to jurisdiction is used, and such jurisdiction exists only for "matters pertaining to the implementation or execution of the plan."[60]

The Tenth Circuit has not adopted a specific postconfirmation related-to jurisdiction test, although it has decided several cases addressing postconfirmation related-to jurisdiction. First, in *U.S. Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*,[61] the Tenth Circuit concluded the bankruptcy court had postconfirmation related-to jurisdiction to determine U.S. Trustee statutory fees. It approved a district court decision concluding the matter was within related-to jurisdiction because collection of quarterly fees would impact creditors' recovery.[62] Second, in *Plotner v. AT & T Corp.*,[63] the Tenth Circuit concluded without analysis in a postconfirmation Chapter 11 adversary proceeding filed by the debtor, that claims of fraud involving a plan-created trust were "at minimum, unmistakably 'related to'" the bankruptcy proceeding.[64] And finally, in

---

[59] *See Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 837 (4th Cir. 2007); *In re Thickstun Bros. Equip. Co.*, 344 B.R. 515, 522 (B.A.P. 6th Cir. 2006); *Sea Hawk Seafoods, Inc. v. State of Alaska (In re Valdez Fisheries Dev. Assoc., Inc.)*, 439 F.3d 545, 548 (9th Cir. 2006).

[60] *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001). *See also Carnero G&P, L.L.C. v. SN EF Maverick, L.L.C. (In re Sanchez Energy Corp.)*, 159 F.4th 309, 313 (5th Cir. 2025) (concluding bankruptcy court lacked related-to jurisdiction to decide a "state law contract dispute that arose eighteen months after the debtor's reorganization plan had been confirmed and consummated" and holding after confirmation bankruptcy courts generally can only hear disputes directly involving carrying out a plan).

[61] 150 F.3d 1233 (10th Cir.1998).

[62] *Id.* at 1237.

[63] 224 F.3d 1161 (10th Cir. 2000).

[64] *Id.* at 1171.

*Peterson v. Fed. Trade Comm'n (In re Peterson)*,[65] the Tenth Circuit concluded there was no related-to jurisdiction over claims for embezzlement and related violations of various federal statutes in a postconfirmation bankruptcy case, stating the court "appropriately applied a strict test for § 1334(b) 'related to' jurisdiction, looking to the proceeding's practical effect on implementation of the confirmed reorganization plan, rather than to its conceivable effect on the bankruptcy estate. Any impact on the implementation of [the debtor's] plan is simply too remote a contingency to support bankruptcy jurisdiction under § 1334(b)."[66]

Given this guidance, this Court concludes there is related-to jurisdiction over the enforcement of the confirmation order and discharge injunction from the bankruptcy case.[67] Plaintiffs' state court petition contains only state law tort claims. But a court will necessarily have to determine if any part of those tort claims was discharged in the Chapter 11 bankruptcy case of Debtor Hawker Beechcraft Corporation. It is this application of the confirmed plan that brings the matter within the Court's related-to jurisdiction. Although the Tenth Circuit has not adopted a test, the Tenth Circuit BAP has implied the interpretation or enforcement of a confirmed plan may bring a matter within a bankruptcy court's

---

[65] 6 F. App'x 837 (10th Cir. 2001) (unpublished).

[66] *Id.* at 839 (internal citations omitted).

[67] One court has concluded the outcome of the Tenth Circuit's case law, combined with the Tenth Circuit BAP's decision in *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 675 (B.A.P. 10th Cir. 2012) (rejecting bankruptcy court jurisdiction over a postconfirmation action against a creditor for wrongful repossession of a vehicle), is to effectively apply the close nexus test. *Scarborough v. Angel Fire Resort Operations, LLC (In re Angel Fire Corp.)*, No. 93-12176-3a11, 2013 WL 1856350, at *12 (DN.M. May 2, 2013). The District Court applied the close nexus test in its referral order in this matter. Doc. 3 p. 2.

related-to jurisdiction.[68] And the Circuit Courts that have adopted tests for postconfirmation related-to jurisdiction would find that jurisdiction here, because this Court is being asked to weigh in on the "interpretation, implementation, consummation, execution, or administration of the confirmed plan."[69]

There appears to be no consensus among bankruptcy courts on this question.[70] But considering the Supreme Court's guidance in *Travelers Indemnity Co.* that a bankruptcy court "plainly had jurisdiction to interpret and enforce its own prior orders,"[71] the Court concludes it has related-to jurisdiction to interpret,

---

[68] *See In re Houlik*, 481 B.R. at 676 (stating that because the action in that case did not impact the "interpretation, implementation, consummation, execution, or administration of the confirmed plan" and did not impact an "integral aspect of the bankruptcy case" there was no related-to jurisdiction).

[69] *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l)*, 372 F. 3d 154, 167 (3d Cir. 2003).

[70] *See, e.g.*, *In re Texaco, Inc.*, 668 B.R. 1, 21 (Bankr. S.D.N.Y. 2025) (noting state court and bankruptcy court have "concurrent jurisdiction" to determine if state court claims are discharged); *Garza v. Earthstone Energy, Inc.*, 582 F. Supp. 3d 405, 414 (S.D. Tex. 2022) ("That Unit Drilling may have defenses [to state law claims for negligence] based on interpretation of the Unit Drilling Plan and/or the Confirmation Order does not convert Plaintiff's purely state law claims into claims within the court's bankruptcy jurisdiction."); *Ashland, Inc. v. G-I Holdings Inc. (In re G-I Holdings, Inc.)*, 564 B.R. 217, 252 (Bankr. D.N.J. 2016) ("[A]lthough the litigation in large part involves application of state contract and corporate law, G–I posits a scenario that may require interpretation of the Plan and the application of the bankruptcy law concerning discharge. A court deciding these issues may have to determine the timing of Ashland's claims and whether 11 U.S.C. § 1141(a) of the Bankruptcy Code bars such claims under res judicata as applied in bankruptcy cases. . . . Accordingly, this Court finds that pursuant to *Resorts International* and its progeny, G–I's affirmative defense satisfies the 'close nexus' test. This Court has related to subject matter jurisdiction over the proceeding."); *In re Angel Fire Corp.*, No. 12-CV-01256-MCA-WPL, 2013 WL 1856350, at *14 (D.N.M. May 2, 2013) ("A proceeding that calls for plan interpretation, but that does not have any demonstrable effect on the estate, the debtor, or an integral aspect of the bankruptcy proceeding itself, is irreconcilable with the jurisdictional limitations imposed on bankruptcy courts by statute and by the Constitution."); *In re Candidus*, 327 B.R. 112, 118 (Bankr. E.D.N.Y. 2005) ("There are four avenues to obtain a judicial determination of dischargeability post-discharge and case closure: i) if the creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over the lawsuit can decide whether the debt falls within any of the exceptions to discharge, ii) the debtor may be able to remove the collection effort to the bankruptcy court, iii) either the debtor or the creditor can move to reopen the bankruptcy case pursuant to Fed. R. Bankr. P. 4007(b) for the purpose of filing a complaint to determine dischargeability, and iv) the debtor can bring an action against the creditor in the bankruptcy court to enforce the § 524(a)(2) discharge injunction.").

[71] 557 U.S. 137, 151 (2009).

administer and enforce a confirmation order of another bankruptcy court when the scope and application of that order is at issue as it relates to Plaintiffs' claims.[72]

## III. Abstention

Although the bankruptcy court has related-to jurisdiction, such jurisdiction is subject to abstention under 28 U.S.C. § 1334(c). Defendant argues the discharge question is central and dominates the state law claims. Defendant also argues the state court petition is entirely based on prepetition claims, citing cases for the proposition that claims arise prebankruptcy, and are thus dischargeable, when there is a pre-bankruptcy triggering event. But Defendant's cases address claims related to cleanup of *pre*petition events.[73]

As noted in the factual recitation above, the claims as plead involve conduct both prior to the bankruptcy of Hawker Beechcraft, Inc. and after that bankruptcy

---

[72] *Cf. In re SunPower Corp.*, No. 24-11648 (CTG), 2026 WL 1735661 (Bankr. D. Del. June 4, 2026) (concluding the bankruptcy court lacked subject matter jurisdiction where there was no language in the court's confirmation order that was ambiguous or needed interpretation because, "everyone agrees what this Court's confirmation order does. It rejects every executory contract held by the debtors as of the effective date"). The parties' briefing makes clear there are factual and legal disputes to be developed and argued concerning the scope and interpretation of the confirmed plan and discharge and injunction order.

[73] *See, e.g.*, *In re Texaco, Inc.*, 505 F. App'x 77, 80 (2d Cir. 2012) (claims related to cleanup operations of physical contaminants and events occurring prepetition were discharged in a confirmation order). *See also In re Motors Liquidation Co.*, 585 B.R. 708, 723 (Bankr. S.D.N.Y. May 4, 2918) (concluding that only "truly independent claims" based solely on a new entity's wrongful conduct could "pass through the bankruptcy gate"). Defendant cites *In re Motors Liquidation Co.*, for the proposition that claims brought post-bankruptcy confirmation are discharged if environmental contaminants were released prior to bankruptcy. But the case does not stand for that proposition and instead relies on a broader decision saying claims based on postpetition conduct are outside the scope of a sale order and only claims that "'arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim'" are barred. *In re Motors Liquidation Co.*, 568 B.R. 217, 231 (Bankr. S.D.N.Y. 2017) (quoting *In re Motors Liquidation III*, 829 F.3d 135, 1256 (2d Cir. 2016)). The same decision quotes another Second Circuit case saying "[t]o expect 'claims' to be filed by those who have not yet had any contact whatever with the tort-feasor" is "absurd." *In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991).

case. The state court petition clearly alleges a continued contamination, the continued release and migration of contaminants, and that for the ten years Defendant has owned and operated the facility (all post-bankruptcy) Defendant has failed to control contaminants, remediate contamination, and notify the public about the threats.[74] The Confirmation Order, attached to Defendant's motion to dismiss, itself states "existing debts and Claims" are discharged. And the purported discharge provision also states debts arising prior to the confirmation date are discharged. At this stage, the Court has nothing in the record from which it could conclude that claims arising post-bankruptcy would be discharged by the confirmation order or discharge injunction. The Court therefore finds the abstention question especially important because, on the current record, the discharge injunction from the bankruptcy case would bar, at most, only a portion of the claims.[75] At this juncture, the pleadings control and the Court cannot resolve factual disputes.[76]

---

[74] Doc. 1-1 p. 12 of 37 ¶ 25.

[75] Defendant's motion does not analyze which claims, or which parts of the claims, are based on prepetition conduct. Rather, Defendant makes sweeping arguments that each claim is barred by the bankruptcy discharge, but to the extent a claim is not, it is barred by CERCLA preemption, and to the extent a claim is not, it is barred by statutes of limitations and repose. The parties' briefs also address the question of whether pre-bankruptcy claims would be subject to the discharge order, disputing the adequacy of the notice given to potential claimants. Because the Court concludes permissive abstention should be applied, it does not address the notice issue and the ultimate question of what claims, if any, were subject to the discharge injunction of the confirmation order.

[76] *See, cf.*, *In re Weiand Auto. Indus.*, 612 B.R. 824, 845 (Bankr. D. Del. 2020) (concluding that the determination of when state tort claims arose required resolution of factual disputes concerning notice and migration of hazardous materials and the assessment of permanent torts versus continuing torts was also a factual determination that was inappropriate at the summary judgment stage).

Abstention by the bankruptcy court is governed by 28 U.S.C. § 1334(c), which states in pertinent part:

> (1) . . . nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Abstention under 28 U.S.C. § 1334(c)(1) is referred to as permissive abstention, and abstention under (c)(2) is referred to as mandatory abstention.

Taken in reverse order, abstention is mandatory under 28 U.S.C. § 1334(c)(2) when: "(1) the motion for abstention is timely; (2) the proceeding is based on state law claims; (3) the claims asserted in the proceeding are non-core 'related to' claims; (4) there is no basis for federal jurisdiction other than 28 U.S.C. § 1334; (5) an action has been commenced in state court; and (6) the action can be timely adjudicated in state court."[77] Here, there is no doubt the motion to abstain was timely filed, as it was filed within thirty days of the removal of the action from state court to federal court. As discussed above, the proceeding is based entirely on state law claims, and the Court has already concluded the claims are non-core, related-to

---

[77] *Bright Green Corp. v. Fikany (In re Bright Green Corp.)*, 671 B.R. 280, 288–89 (Bankr. D.N.M. 2025).

claims. There is also no dispute that the state court action was commenced in state court and could be timely adjudicated there.

The sole issue raised by the parties is whether there is a basis for federal jurisdiction other than under 28 U.S.C. § 1334. Here, Defendant's Notice of Removal asserts removal is authorized under both 28 U.S.C. § 1334 *and* § 1331. Under 28 U.S.C. § 1331, a district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Defendant asserts CERCLA, 42 U.S.C. § 9601 et seq., as its basis for federal question jurisdiction, which Plaintiff denies under the well-pleaded complaint rule.[78]

Defendant asserts jurisdiction under 28 U.S.C. § 1331, both independently and as a complement of bankruptcy court jurisdiction under 28 U.S.C. § 1334. In other words, Defendant asserts independent federal district court jurisdiction under 28 U.S.C. § 1331 and removal under 28 U.S.C. § 1441. It is for the District Court to assess removal and jurisdiction under those statutory subsections. For the purpose of assessing jurisdiction under 28 U.S.C. § 1334 and abstention under § 1334(c), the Court concludes it need not opine on 28 U.S.C. § 1331, because the basis for permissive abstention is clear under 28 U.S.C. § 1334(c)(1).[79]

---

[78] *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").

[79] That said, if the District Court concludes there is no jurisdiction under 28 U.S.C. § 1331, then based on the findings and conclusions herein, mandatory abstention would also be appropriate under 28 U.S.C. § 1334(c)(2).

"Permissive abstention is a matter within the sound discretion of the bankruptcy court."[80] Although permissive abstention should be "the exception rather than the rule,"[81] it is appropriate here.

Permissive abstention applies regardless of whether the matter is core or non-core.[82] Courts apply multiple factors to determine whether permissive abstention should be exercised:

> 1. The effect of abstention and remand on the administration of the bankruptcy estate, including whether claims could be timely adjudicated in state court to meet the needs of the bankruptcy case;
>
> 2. The extent to which state law issues predominate over bankruptcy issues;
>
> 3. The difficult or unsettled nature of the applicable law;
>
> 4. Whether abstention and remand serves principles of judicial economy;
>
> 5. The presence of a related proceeding commenced in state court or another non-bankruptcy court;
>
> 6. The feasibility of severing non-core state law claims from core bankruptcy claims;
>
> 7. The jurisdictional basis for the bankruptcy court to hear the claims in the removed proceeding, if any, other than 28 U.S.C. § 1334;
>
> 8. The whether the removed proceeding is a core proceeding;
>
> 9. The likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

---

[80] *Strong v. W. United Life Assurance Co. (In re Tri-Valley Distrib., Inc.)*, 350 B.R. 628 (B.A.P. 10th Cir. 2006).

[81] *In re Commercial Fin. Serv., Inc.*, 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000).

[82] *Telluride Asset Resolution, LLC v. Telluride Glob. Dev., LLC (In re Telluride Income Growth, L.P.)*, 364 B.R. 390, 398 (B.A.P. 10th Cir. 2007) ("under § 1334(c)(1), permissive abstention . . . a bankruptcy court may abstain from both core and non-core matters").

10. The existence of a right to jury trial;

11. The presence of non-debtor parties;

12. The burden the proceeding places on the bankruptcy court's docket;

13. Whether remand lessens the possibility of inconsistent results;

14. Whether the court where the action originated has greater expertise;

15. The status of the proceeding in the state court prior to removal and the status of the proceeding in bankruptcy court; and

16. Whether the nature of the proceeding [is] better suited for state court or bankruptcy court.[83]

A bankruptcy court has "discretion to determine the relative weight to give each factor."[84] Here, the factors that are applicable favor permissive abstention.

First, as the Court noted above, the bankruptcy case here is far removed from the current matter. The debtor (Hawker Beechcraft Inc.) filed its Chapter 11 bankruptcy petition in May 2012. The plan was confirmed and the entity Beechcraft Corp. emerged from bankruptcy in February 2013. The bankruptcy case was (presumably) long ago fully administered and closed. As a result, the litigation of Plaintiffs' state law claims will involve resolution of the question of which claims preceded and were discharged by that bankruptcy case, but will have no impact on the administration of the bankruptcy case itself.[85] Defendant characterizes this

---

[83] *In re Bright Green Corp.*, 671 B.R. at 292. Other courts list factors for consideration differently, but because 28 U.S.C. § 1334(c)(1) includes the general terms "interest of justice, "interest of comity," and "respect for State law," a multi-factor test is appropriate. *Id.*

[84] *Id.*

[85] *See In re Fruit of the Loom, Inc.*, 407 B.R. 593, 600 (Bankr. D. Del. 2009) (noting bankruptcy plan had been confirmed "over seven years ago" and therefore there was "little chance that the action [would] have an effect on the administration of the estate").

factor as neutral, acknowledging the plan in the bankruptcy case at issue was confirmed in 2012, but the Court disagrees with that assessment. Having zero impact on the bankruptcy estate and case is not a neutral factor when considering abstention under 28 U.S.C. § 1334(c)(1).

Second, Plaintiffs' claims are entirely based on state law, and state law predominates over bankruptcy issues. The only bankruptcy issue—the enforcement of the discharge—is a preliminary issue concerning the scope of the state law claims to be litigated. The state law claims are predominant. This Court could not enter a final judgment on Plaintiffs' state law claims absent the consent of both parties, which is lacking here, and a "two-tier review may favor a finding of timely adjudication in a state court."[86] Defendant argues this factor does not favor remand because "the state law claims will be barred if the bankruptcy court finds that they are subject to the discharge injunction."[87] But as noted above, based on the current record, at best only a portion of the state law claims might be barred. The claims as stated include alleged, post-bankruptcy claims.

Third, abstention and remand would serve judicial economy. This Court is one of limited jurisdiction. Plaintiffs' claims are, as noted here, predominantly state law matters outside this Court's jurisdiction. The state court has expertise in matters of state law. The state law claims were recently filed at the time of removal

---

[86] *See Strong v. W. United Life Assurance Co. (In re Tri-Valley Distrib., Inc.)*, 350 B.R. 628 (B.A.P. 10th Cir. 2006) (permissive abstention appropriate when "state law issues predominate over bankruptcy issues").

[87] Doc. 18 p. 10.

and are more efficiently addressed by a court that has the authority to administer the demanded jury trial[88] and enter final judgment on the claims. The proceeding was commenced by non-debtor parties in state court and there are no core bankruptcy claims within. The state court can assess Defendant's affirmative defense related to the discharge in the bankruptcy case.[89] Neither this Court nor the state court is the court that issued the discharge or the confirmation order.

The additional factors are either neutral or nonapplicable. As noted above, Plaintiffs' state law claims include post-bankruptcy conduct. Even assuming the state law claims also involve pre-bankruptcy conduct and claims that were discharged, the post-bankruptcy discharge claims remain. So ultimately, at best, part of Plaintiffs' claims would be barred by the discharge injunction. The bankruptcy court is not the right venue for this action. At most the bankruptcy court would have related-to jurisdiction, state law issues predominate over the bankruptcy issues, and permissive abstention is appropriate. These "more substantial" factors weigh in favor of permissive abstention.[90]

---

[88] *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 778 n.17 (B.A.P. 10th Cir. 1997) (addressing factors for mandatory abstention).

[89] 28 U.S.C. § 1334(b). *See Flanders v. Lawrence (In re Flanders)*, 517 B.R. 245, (Bankr. D. Colo. 2014) (discussing ability of debtor in state court case to raise discharge as affirmative defense).

[90] *Manchester v. Kretchmar (In re Kretchmar)*, 591 B.R. 876, 882 (Bankr. W.D. Okla. 2018) ("The evaluation of these factors is not merely a mathematical exercise. Some factors are more substantial than others, such as the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core under 28 U.S.C. § 157." (internal quotation omitted)).

## IV. Application to Pending Motions

The Court believes it has related-to jurisdiction over the question of the impact of the 2012 discharge injunction and confirmation order on Plaintiffs' state law claims. But the Court also believes the factors for permissive abstention apply, and Plaintiffs' motion for permissive abstention should be granted.

If those were the only matters, this would be more straightforward and the Court would recommend remand under 28 U.S.C. § 1452(b).[91] But here, Defendant additionally removed the state court action to District Court under 28 U.S.C. § 1441 based on jurisdiction under 28 U.S.C. § 1331.[92] The District Court referred the matter to this Court for assessment of bankruptcy court jurisdiction under 28 U.SC. § 1334. This Court has no authority to assess the District Court's jurisdiction under 28 U.S.C. § 1331 or removal under 28 U.S.C. § 1441. Nothing herein should be construed as commentary on those issues or the ultimate resolution of the motion to dismiss.

## V. Conclusion

The Court concludes there is no core jurisdiction under 28 U.S.C. § 1334(b), since this proceeding does not arise under or arise in the Bankruptcy Code. There is related-to jurisdiction over the question presented, because the proceeding is related to a case under title 11. Permissive abstention is appropriate under 28 U.S.C.

---

[91] 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.").

[92] *See* Doc. 1 p. 10 ¶ 41 ("Alone or in combination with the bankruptcy court jurisdiction, the Court additionally has jurisdiction over the Lawsuit under 28 U.S.C. § 1331 and the case may be removed pursuant to § 1441(a) because there exists a federal question under CERCLA.").

§ 1334(c)(1). Because this is a non-core proceeding, the Court submits these proposed findings of fact and conclusions of law to the District Court for consideration and further proceedings pursuant to 28 U.S.C. § 157(c)(1).

###